**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**DAVID L. MATTISON, JR.,**

      **Plaintiff,**

-v-

**PNC BANK, N.A., Successor by merger**
**to National City Bank, successor by merger**
**to The Provident Bank**

      **Defendant.**

**Case No. 3:13-cv-061**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER GRANTING PNC'S PARTIAL MOTION TO**
**DISMISS (Doc. #12) AND TERMINATING THIS CASE**

---

Plaintiff David L. Mattison, Jr. ("Mattison") has brought claims against Defendant PNC

Bank, successor by merger to National City Bank, successor by merger to The Provident Bank

("PNC") regarding a foreclosure. In his Amended Complaint, Mattison asserts eight (8) claims

for relief. (Doc. #6.) Mattison's First Claim for Relief is for violation of the Fair Debt Collection

Practices Act (the "FDCPA"). His Second Claim for Relief is for violation of the Fair Credit

Reporting Act (the "FCRA"). His Third Claim for Relief is for violation of the Real Estate

Settlement Procedures Act (the "RESPA"). His Fourth and Fifth Claims for Relief are for

negligence. His Sixth Claim for Relief is for fraud/misrepresentation. His Seventh Claim for

Relief is for unjust enrichment, and his Eighth Claim for Relief is for breach of the covenant of

good faith and fair dealing.

Now before the Court is PNC's Partial Motion To Dismiss Claims In Plaintiff's

Amended Complaint brought pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. #12.) This Motion is

now fully briefed and ripe for decision. A relevant factual background taken, as it must be, from

the Amended Complaint will first be set forth followed by the standard of review and an analysis of PNC's Motion.

## RELEVANT FACTUAL BACKGROUND

Mattison is the recorded owner of real property located at 4207 Roman Drive, Dayton, Ohio 45415 (the "Roman Drive Property"). In 1993, Mattison borrowed $69,350 from The Provident Bank. As collateral for the Note regarding the $69,350 issued by The Provident Bank to Mattison, Mattison gave The Provident Bank a Mortgage on the Roman Drive Property. This Mortgage was recorded in April of 1993.

On July 27, 2010, a complaint for foreclosure was filed by PNC claiming to be the holder of the Note and Mortgage. The Note attached to the foreclosure complaint showed evidence of formal negotiation in the form of a blank endorsement dated sometime in 1993 which provides that, "PAY TO THE ORDER OF _____ WITHOUT RECOURSE THIS ____ DAY OF _____ 1993" and is signed by "Martin J. Weiss, Assistant Vice President." No assignment of the Mortgage was included with the foreclosure complaint and no evidence of assignment appears on the Mortgage or is recorded.

On September 23, 2010, Mattison met with Mrs. Lisa Gibson ("Gibson"), a loan modification officer for PNC. At the time, Gibson informed Mattison that a repayment plan could be reached.

PNC sent Mattison a proposed repayment agreement on September 28, 2010. Therein, PNC claimed to be the owner and holder of a mortgage being foreclosed. PNC also claimed that it was due $23,429.92. At the time, Mattison says he was behind in the amount of $4,785.

Mattison expressed concern to Gibson about the proposed repayment agreement. Gibson

responded that, once Mattison made three months of payments, PNC would stop the foreclosure.

Mattison then informed Gibson that the foreclosure complaint was going forward. Gibson responded that, once the attorney's office receives the signed repayment agreement, the foreclosure action will be placed on hold.

Mattison next filed a request for mediation. PNC continued to pursue the foreclosure action.

During a mediation conference on February 2, 2011, Mattison was told that a repayment agreement was sent out. Another mediation conference was set for March 21, 2011, to make sure that the repayment agreement was being satisfied.

On March 16, 2011, Mattison received the second proposed repayment agreement. According to the second proposed repayment agreement, which Mattison received on March 16, 2011, the agreement was voided on February 15, 2011.

During this mediation process, PNC first represented that it was the Owner of the Note. PNC also represented that they were the only parties of interest.

Even though this repayment agreement was not fully consummated, the Parties agree that a payment of $6,338 was made by Mattison in reliance on the mediation discussions. After receiving the $6,338 from Mattison, PNC sent Mattison the settlement papers late and said that the deal was off and that PNC was continuing to pursue foreclosure.

In the foreclosure action, PNC has made the argument that it is the owner of the Note and that it has ownership of the Mortgage as successor by merger with National City Bank, successor by merger with Provident Bank. However, through discovery, Mattison found that PNC was a servicer of the true owners of the Note in question and did not receive the Note via merger.

In May of 2011, Mattison sent a Qualified Written Request ("QWR") requesting information regarding his loan, who owned the Note, and the legal status of the Note. PNC refused to supply any additional information.

Since June 3, 2011, Mattison has questioned the authenticity of the note attached to PNC's foreclosure action. Mattison asserts that the note attached to the foreclosure action is a completely different note than those filed in the Montgomery County Clerk's office in 1996 and 1997 cases by PNC against the Roman Drive Property. The notes filed in the 1996 and 1997 cases were not endorsed in blank in 1993 and no signature of a "Martin J. Weiss, Assistant Vice President" is evidenced on these notes. PNC could not or would not produce Mrs. Teresa S. Clopp for deposition concerning these inconsistencies.

Mattison alleges that PNC used robo signed documents and misrepresented PNC's ownership of the Note attached to the Roman Drive Property. After two years of litigation, the foreclosure action was administratively dismissed on August 21, 2012.

Following this dismissal, Mattison says he has tried to settle this matter. PNC has not responded.

In a letter to Mattison dated February 1, 2013, PNC states that, "[e]ffective January 29, 2013, the ownership of your mortgage loan… was transferred to: PNC Bank, National Association."  This letter also says that, "The sale, transfer or assignment of your mortgage loan does not affect any term or condition of the promissory note evidencing your mortgage loan or the security instrument (i.e. mortgage, deed of trust or security deed) securing repayment of the promissory note." Finally, the letter says that, "the ownership change of your mortgage loan does

not affect the servicing of your mortgage loan…."[1]

Mattison now argues that at no time during the process did PNC hold or acquire/own the Note in question. Mattison also argues that PNC violated his constitutional right to the quiet enjoyment of property and took the foreclosure action without any standing to do so. Finally, Mattison argues that PNC grossly impaired his creditworthiness. The Amended Complaint in this matter followed.

### STANDARD OF REVIEW FOR 12(b)(6) MOTIONS

The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)(citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)). Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004). Further, for purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232 (1974).

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(citing *Papasan v. Allain*, 478 U.S.

---

[1]This letter was not attached to nor referenced in Mattison's Am. Compl. but was attached to his Response to PNC's Partial Motion To Dismiss. Mattison does, however, allege that PNC misrepresented during a mediation process that it was the owner of the Note.

265, 286 (1986)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. However, the factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 127 S.Ct. at 1965(citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). The factual allegations in the complaint, even if doubtful in fact, must do something more than merely create a suspicion of a legally cognizable right. *Id.*

The Sixth Circuit has noted that to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). The Court "need not accept as true legal conclusions or unwarranted factual inferences*." Morgan v. Church's Fried Chicken,* 829 F. 2d 10, 12 (6th Cir. 1987). Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Education.*, 76 F. 3d 716, 726 (6th Cir. 1996). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.*

In evaluating whether the plaintiff has stated a cognizable claim, the court generally may not consider matters outside of the pleadings. *See Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). To this effect, Rule 12(b) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed R. Civ. P. 12(b).

The courts have clarified the scope of what may be considered without reaching 'matters outside of the pleadings.' A court may consider: (1) any documents attached to, incorporated by or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; and (4) matters of which the court may take judicial notice. *Apex Energy Group, LLC v. Apex Energy Solutions of Cincinnati, LLC*, No. 1:12cv46, 2013 WL 394464 at *2 (S.D. Ohio Jan. 31, 2013.) Under these circumstances, the court may consider extraneous documents without requiring the conversion of the motion to one for summary judgment. *Id.*

Notwithstanding, the ability of a court to consider supplementary documents is not without limitations. The Sixth Circuit has explained that "[w]hile documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Southeast LLC v. BellSouth Telecommunications.*, Inc., 672 F.3d 396, 400 (6th Cir. 2012) (citations, internal quotation marks, and alterations omitted). Put otherwise, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss; but a genuine dispute as to the legal sufficiency of said document requires the court to consider the issue under a motion for summary judgment standard. *Id.*; *see also Ouwinga v. Benistar 419 Plan Services.*, 694 F.3d 783, 796-797 (6th Cir. 2012).

## ANALYSIS

PNC seeks to dismiss Mattison's FDCPA, FCRA and RESPA claims pursuant to Fed. R.

Civ. P. 12(b)(6). PNC further argues that, if these federal claims are dismissed with prejudice, the remaining state law claims must be dismissed for lack of subject matter jurisdiction. Each of Mattison's federal claims will be addressed seriatim.

### FDCPA Claim

PNC argues that Mattison's FDCPA claim is time-barred and Mattison cannot rely upon equitable tolling to disregard the statute of limitations. PNC also argues that it is not a debt collector as defined by the FDCPA. Mattison responds that his FDCPA claim is not time-barred, that PNC is a debt collector as defined by the FDCPA and that PNC's fraudulent concealment prevented him from discovering the FDCPA violations.

Statute of Limitations

"The FDCPA is a broad statute aimed at eliminating the use of abusive, deceptive, and unfair debt collection practices by debt collectors." *Purnell v. Arrow*, 303 F. App'x 297, 301 (6th Cir. 2008). FDCPA claims have a one-year statute of limitations. See 15 U.S.C. § 1692k(d). Thus, each alleged discrete violation must have occurred within the one-year limitation period and not just be the later effects of an earlier time-barred violation. *Purnell*, 303 F. App'x at 302.

Mattison's original Complaint was filed on March 2, 2013. Thus, Mattison must plead FDCPA violations that occurred on or after March 2, 2012, to avoid the statute of limitations.

Mattison pleads several discrete violations of the FDCPA. (See Am. Compl. §§ 64-69, 71-74.) However, the Am. Compl. does not indicate that any of these violations occurred on or after March 2, 2012.

Mattison argues that he has pled FDCPA violations that occurred in July of 2012 and

February of 2013[2]. Mattison pleads that, after the foreclosure action was dismissed on August 21, 2012, he has tried to settle this matter with PNC and, at no time during this process did PNC hold or acquire the Note in question. (Am. Compl. ¶¶ 52, 53, 57.) He also pleads that PNC has not responded to any of his settlement proposals. (Id. ¶ 54.) Thus, Mattison is saying that PNC violated the FDCPA by negotiating with him in the Fall of 2012 regarding the Note in question when PNC did not own the Note in question.

This argument is unavailing for at least two reasons. First, actions that might take place during settlement negotiations are not violations of the FDCPA. *See Ball v. Ocwen Loan Servicing, LLC*, No. 1:12CV0604, 2012 WL 1745479 at *5 (N.D. Ohio May 16, 2012) Second, while Mattison may argue that PNC purchased Mattison's defaulted mortgage loan on or around January 29, 2013, this purchase does not alter PNC's prior status. (See Am. Compl. ¶ 21.)

Regarding PNC's prior status, this Court takes judicial notice that The Court of Common Pleas of Montgomery County, Ohio has found that, upon taking possession of the Note, which was endorsed in blank, PNC became the holder of the note and was thus entitled to enforce it.[3] *PNC v. Mattison*, 2010 CV 05946, Magistrate's Pretrial Entry and Order filed July 17, 2012 (Montgomery Cnty. Ct. Com. Pl. Jul. 17, 2012).

In sum, Mattison has not pled violations of the FDCPA that occurred on or after March 2, 2012. However, Mattison argues that fraudulent concealment prevented him from discovering

---

[2]Mattison's reference to the February 2013 time frame in his brief is not supported by any allegations in his Am. Compl. It is, however, supported by a letter he received from PNC and later filed with his Response to PNC's Partial Motion To Dismiss.

[3]The Montgomery Cnty. Ct. Com. Pl. also found that Mattison viewed the Note during a meeting with PNC's counsel on June 4, 2012.

the FDCPA violations. Specifically, Mattison argues that PNC fraudulently concealed their non-holder and non-ownership position from him until February 2013.

Fraudulent concealment is an argument for equitable tolling. *Pinney Dock and Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988). The Sixth Circuit has not decided whether equitable tolling applies to FDCPA claims. *Ball*, 2012 WL 1745479 at *6.

Mattison has the burden of proving both equitable tolling and fraudulent inducement. *Pinney*, 838 F.2d at 1465; Ball, 2012 WL 1745479 at * 6. However, even if equitable tolling applied, Mattison has not plausibly pled fraudulent concealment.

To maintain a claim for fraudulent concealment, Mattison must plead that (1) PNC concealed the conduct that constitutes the cause of action; (2) that PNC's concealment prevented Mattison from discovering the cause of action; and (3) until discovery, Mattison exercised due diligence in trying to find out about the cause of action. *Pinney*, 838 F.2d at 1465.

The conduct that PNC allegedly concealed is its non-holder and non-ownership status of the Note. However, as was determined by the Montgomery County Court of Common Pleas, upon taking possession of the Note, which was endorsed in blank, PNC became the holder of the Note and was entitled to enforce it. Further, because PNC may have later bought the Note in foreclosure, does not mean that PNC was not entitled to earlier enforce it as a servicer. Thus, Mattison has not pled facts from which the Court can conclude that he has a plausible argument for fraudulent concealment, particularly since he knew or should have known that PNC could enforce the Note, at least as a servicer, at the time of the foreclosure.

Is PNC a Debt Collector?

In addition to arguing that the statute of limitations bars Mattison's FDCPA claim, PNC

argues that it is not a debt collector and is, therefore, not subject to provisions of the FDCPA. Mattison responds that PNC is a debt collector.

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mail in any business for the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts due or asserted to be owed or due another…." 15 U.S.C. § 1692a(6). The FDCPA then excludes specific categories of entities which may otherwise be collecting debts. Id. Relevant here is an exclusion for "any person collecting or attempting to collect any debt owed… or due another to the extent such activity… concerns a debt which was not in default at the time it was obtained by such person…." 15 U.S.C. § 1692a(6)(F). Thus, a debt collector under the FDCPA explicitly excludes a creditor collecting a debt owed to it which was not in default at the time it was obtained.

Mortgage servicers may also be excluded from the FDCPA's definition of debt collector. Mortgage servicers are excluded provided the servicer neither acquired the debt when it was in default nor treated the debt as if it were in default at the time of acquisition. *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359-62 (6th Cir. 2012).

Mattison alleges that PNC is a debt collector under the FDCPA. (Am. Compl. ¶ 61.) However, this is a legal conclusion and he offers no further factual allegations rendering this legal conclusion plausible. In fact, Mattison bases this argument on his assertion that PNC was attempting to foreclose but did not acquire the Note until January 29, 2013. However, as the Court of Common Pleas of Montgomery County, Ohio has determined in the foreclosure action, upon taking possession of the Note, which was endorsed in blank, PNC became the holder of the

Note and was thus entitled to enforce it. In addition, Mattison has pled that PNC was a servicer of the note. (Am. Compl. ¶ 40.)

Mattison suggests that *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013), somehow makes PNC an FDCPA debt collector. However, *Glazer* holds just the opposite. In *Glazer*, the Sixth Circuit held that Chase Home Finance LLC, the mortgage loan servicer for a Fannie Mae owned mortgage loan, was not an FDCPA debt collector. *Id.* at 457.

At the time of the foreclosure action, PNC was, at minimum, a servicer. Whether owner or servicer, PNC does not meet the FDCPA definition of debt collector.

Conclusion On FDCPA Claim

Mattison has not plausibly pled that PNC is a debt collector as defined in the FDCPA. If PNC were a debt collector, Mattison has not pled violations within the one-year statute of limitations for FDCPA claims and he has not shown that he is eligible for equitable tolling. Mattison's FDCPA claim must be dismissed.

**FCRA Claim**

PNC argues that Mattison has not plausibly pled an FCRA claim. Specifically, PNC argues that there is not a private right of action for violations of 15 U.S.C. § 1681s-2(a), and there is no allegation that PNC received a notice of dispute from a credit reporting agency. Mattison responds that it is not plausible for him to provide evidence of the disputes he initiated with several reporting agencies in the pleading stage and that he has pled that PNC was negligent in violation of 15 U.S.C. § 1681o.

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Smith v. Encore Credit Corp.*, 623 F.

-12-

Supp.2d 910, 921 (N.D. Ohio 2008)(citing *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007)). Its purpose is to protect consumers from inaccurate information in consumer reports and to establish credit reporting procedures that use correct, relevant, up-to-date information in a confidential and responsible manner. *Id.*(citing *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)).

### 15 U.S.C. § 1681s-2(a)

Mattison pleads that PNC was required to provide a notice of dispute to the credit reporting agencies in accordance with 15 U.S.C. § 1681s-2(a) when PNC knew that he was disputing the legal status and amount owed and PNC had reasonable cause to believe that the information they were reporting was inaccurate. (Am. Compl. § 82.) He also pleads that PNC was required under 15 U.S.C. § 1681s-2(a) to correct and update the information provided to the credit reporting agencies when PNC knew or should have known that information they were providing was inaccurate or incomplete. However, these claims fail because Mattison has no civil cause of action for violation of 15 U.S.C. § 1681s-2(a). 15 U.S.C. § 1681s-2(c); *see also Zamos v. Asset Acceptance, LLC*, 423 F. Supp.2d 777, 787-88 (N.D. Ohio 2006).

### 15 U.S.C. § 1681s-2(b)

Mattison also pleads that PNC was required under 15 U.S.C. § 1681s-2(b) to respond to the request for reinvestigation initiated by him through one or more credit reporting agencies "by completing an inquiry not the facts underlying the trade-line and providing accurate information to the credit reporting agencies regarding that trade-line." (Am. Compl. ¶ 84.) Further, PNC, according to Mattison, was required to cease reporting the derogatory information during the 60 days following the receipt of the Qualified Written Request ("QWR"). (Am. Compl. ¶ 85.)

Mattison also pleads that PNC continued to report the adverse credit information in violation of 15 U.S.C. § 1681s-2(b). Finally, Mattison pleads that PNC negligently failed to put in place a procedure to complete an adequate reinvestigation of disputed credit information in violation of 15 U.S.C. § 1681s-2(b) and § 1681o. (Am. Compl. ¶¶ 84-87.)

At least one federal court in Ohio has declined to recognize a private cause of action under 15 U.S.C. § 1681s-2(b) for a consumer against a furnisher of information. *Zamos*, 423 F. Supp. 2d at 788. However, whether the Sixth Circuit recognizes a private cause of action for a consumer against a furnisher of information under 15 U.S.C. § 1681s-2(b) remains unclear. *Encore Credit*, 623 F. Supp. 2d at 922.

If Mattison was able to proceed with a private cause of action, the statute provides that a furnisher of information has no duties until receiving notice of a dispute. 15 U.S.C. § 1681s-2(b)(1). However, a "plaintiff must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed." *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, (6th Cir. 2004)(citing *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 639–40 (5th Cir. 2002)).

In this case, MATTISON does not allege that he filed a dispute with a credit reporting agency.[4] The only allegation in Mattison's Am. Compl. that comes close is that PNC was required to respond to the request for the reinvestigation initiated by Mattison through one or more credit reporting agencies…. (Am. Compl. ¶ 84.) However, this is a mere recitation of an element of the FCRA and does not specifically identify any claim that he specifically filed with a

---

[4]Mattison now says that it is not plausible for him to provide evidence of the disputes he initiated with several reporting agencies in the pleading stage.

specific credit reporting agency on a specific date. *See Diop v. BSI Financial Services*, No. 12-14377, 2013 U.S. Dist. LEXIS 7088 at *3 (E.D. Mich. Jan. 17, 2013)(finding that the exact same language found in ¶ 84 of Mattison's Am. Compl. contained no supporting facts resulting in dismissal).

Mattison also does not allege that PNC received any notice of disputed information from a credit reporting agency. Therefore, Mattison has not alleged a violation of 15 U.S.C. § 1691s-2(b) upon which relief may be granted.

15 U.S.C. § 1681o

Mattison pleads that PNC negligently failed to put in place a procedure to complete an adequate reinvestigation of disputed credit information in violation of 15 U.S.C. § 1681o. (Am. Compl. ¶ 87.) This section provides for civil liability for failing to comply with any requirement imposed under the FCRA. 15 U.S.C. § 1681o. Thus, it cannot stand alone. There must be a failure to comply with some other provision of the FCRA and Mattison has not successfully pled any other failure to comply. Therefore, Mattison has not alleged a violation of 15 U.S.C. § 1691o upon which relief may be granted.

Conclusion On FCRA Claim

Mattison has not plausibly pled an FCRA claim. There is not a private right of action for violations of 15 U.S.C.§ 1681s-2(a) and Mattison has not pled violations of 15 U.S.C. §§ 1691s(2)(b) or 1681o upon which relief may be granted. Therefore, Mattison's FCRA claim must be dismissed.

**RESPA Claim**

PNC argues that Mattison's RESPA claim fails because Mattison has not pled any

-15-

actionable damages or any damages causally related to a RESPA violation. Mattison responds that his Am. Compl. pleads actual damages under RESPA.

RESPA provides that failure to comply results in liability for actual damages and any additional damages the court may allow if there is a pattern or practice of noncompliance. 12 U.S.C. § 2605. Courts have determined that actual damages must be pled as part of any RESPA claim and any alleged loss must be related to the alleged RESPA violation itself. *Marais v. Chase Home Finance, LLC*, No. 2:11-cv-314, 2012 WL 4475766 at *6 (S.D. Ohio Sep. 26, 2012); *see also Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505 at 510-11 (8th Cir. 2012)(damages for a RESPA claim must be pled with particularity showing that a failure to respond or give notice has caused actual harm).

Mattison pleads that, as a result of PNC's violations of RESPA, he has "suffered damages of an economic and non-economic nature." (Am. Compl. ¶ 98.) While this may causally connect damages to the alleged RESPA violation, it does identify the damages with the required specificity.

Mattison asserts that the issue is whether actual damages may include compensation for economic loss and/or emotional and mental distress. However, this is not the issue. The issue is whether he has pled actual damages as a result of PNC's alleged RESPA violation.

Mattison alleges no specific damages that relate to his RESPA claim. Therefore, his RESPA claim must be dismissed.

## CONCLUSION

All of Mattison's federal claims are dismissed. Further, without federal question jurisdiction, this Court has no power to adjudicate Mattison's state-law claims. Therefore, they

are also dismissed.

PNC's Partial Motion To Dismiss (doc. #12) is GRANTED. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Thirtieth day of July, 2013.

**s/Thomas M. Rose**
_____
THOMAS M. ROSE
UNITED STATES DISTRICT

JUDGE

Copies furnished to:

Counsel of Record